**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NATASHA S. PARRISH, | ) | CASE NO. 1:16-cv-1880 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| *Acting Comm'r of Social Security*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Natasha S. Parrish (hereinafter "Plaintiff"), challenges the final decision of

Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (hereinafter

"Commissioner"), denying her applications for a Period of Disability ("POD"), Disability

Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has

jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States

Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

# I. Procedural History

On July 8, 2013, Plaintiff filed her applications for POD, DIB, and SSI, alleging a disability onset date of February 28, 2013. (R. 9, Transcript ("Tr.") 182-194). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 138-144, 147-159). Plaintiff participated in the hearing on June 18, 2015, was represented by counsel, and testified. (Tr. 26-81). A vocational expert ("VE") also participated and testified. *Id*. On July 17, 2015, the ALJ found Plaintiff not disabled. (Tr. 21). On July 7, 2016, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). On July 26, 2016, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11 & 13).

Plaintiff asserts the following assignments of error: the ALJ's finding at Step Five was contrary to law and/or not based upon substantial evidence. (R. 11).

## II. Evidence

### A. Personal and Vocational Evidence

Plaintiff was born in 1973 and was 39-years-old on the alleged disability onset date. (Tr. 20, 182). She had at least a high school education and was able to communicate in English. (Tr. 20). She had past relevant work as a telephone solicitor, server, nurse assistant, delivery person, circuit board finisher, and bench assembler. (Tr. 19-20).

**B. Relevant Medical Evidence**[1]

**1. Treatment Records**

The parties agree that in June of 2013, Plaintiff underwent back surgery and ensuing therapy after her ex-boyfriend pushed her from the second floor of a building. (R. 11, PageID# 919 & R. 13, PageID# 934, *citing* Tr. 276-385, 477-532, 564-814).

By July 15, 2013, Robert T. Gertman, M.D., Ph.D., noted that Plaintiff had "done reasonably well following her surgery with regards to her neurological exam. Her leg weakness has resolved and she is able to ambulate, but restricted due to her pelvic fracture pain as well as significant back pain." (Tr. 290). On physical examination, her gait and station was within normal limits. (Tr. 292).

On August 2, 2013, nurse practitioner Rachael Martin, CNP, noted that Plaintiff had an impaired gait and used a cane. (Tr. 547). She stated Plaintiff's "injuries and gait were also improved from the last appointment." (Tr. 545). She appeared to treat Plaintiff primarily for her mental health issues, and signed a letter indicating that Plaintiff was "currently stable and would be capable of academic achievement." (Tr. 545-548).

On October 13, 2013, Plaintiff's reflexes were "2+ in bilateral upper and lower extremities with downgoing plantar responses." (Tr. 506). Her motor strength, fine motor coordination, and

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs *and* deemed relevant by the court to the assignments of error raised. The court notes Plaintiff's recitation of the medical treatment evidence, as opposed to opinion evidence, is less than two pages in length, despite a rather lengthy record spanning over 800 pages, and the Commissioner's recitation is even shorter. (R. 11, PageID# 919-920; R. 13, PageID# 934-935). While the court appreciates brevity where appropriate, the court's Initial Order required that "All facts relevant to the legal issues and discussion must be set forth in the 'Facts' section." (R. 5, PageID# 29). As explained in the court's analysis *infra*, Plaintiff's arguments suffer significantly from the dearth of facts cited to support them.

gait were all normal. *Id*.

On November 15, 2013, Farnaz Baig, M. Ed, LPC, a counselor, completed a mental status exam and noted the following about Plaintiff: she was well groomed; her behavior was cooperative and calm; she was oriented x 3; her speech was clear with normal rate and flow; her thought process was logical, organized, with tight association; she denied any form of hallucinations or suicidal/homicidal ideation, but expressed paranoid ideation; her judgment and insight were good; her recent and remote memory appeared adequate; she reported difficulties with attention span and concentration; her language was appropriate; her fund of knowledge was "okay;" her affect was mood-congruent; and, her mood was dysphoric, depressed, overwhelmed. (Tr. 497). He diagnosed PTSD, agoraphobia with panic disorder, adjustment disorder with anxiety and depressed mood, and assigned Plaintiff GAF score of 51-60 indicative of moderate symptoms. (Tr. 497-498).

On December 24, 2013, Plaintiff's gait was "normal straight and tandem." (Tr. 570). Upon review of systems, she had no musculoskeletal myalgias or arthralgias and no depression or anxiety. (Tr. 569).

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On August 26, 2013, State agency physician Eli Perencevich, D.O, reviewed Plaintiff's medical records and opined that Plaintiff, in an 8-hour workday, could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk 6 hours, sit for 6 hours, never climb ladders/ropes/scaffolds, balance frequently, and occasionally, stoop, kneel, and crawl. (Tr. 89). He opined that Plaintiff had no manipulative, visual or communicative limitations. *Id*. Plaintiff, however, had to avoid all exposure to hazards and avoid concentrated exposure to vibration. (Tr. 90).

On September 9, 2013, psychologist Herschel Pickholtz, Ed. D., performed a psychological evaluation of Plaintiff at the request of the Division of Disability Determination. (Tr. 465-472). Dr. Pickholtz diagnosed polysubstance dependence in recent remission, moderate depressive disorder, NOS, and moderate post-traumatic stress disorder. (Tr. 471). He assigned her a GAF score of 55, indicative of moderate symptoms. *Id*. He opined that Plaintiff was slightly impaired in her ability to understand, remember, and carry out instructions. (Tr. 472). He noted that Plaintiff's "capacities for attention and concentration, based upon recall of digits forwards and backwards and mathematical computational skills fell in the low average ranges," and he found "[h]er capacities to perform 1 to 3-step tasks for work comparable to the type of work she did in the past falls within the somewhat impaired range of impairment with her ongoing sobriety and psychiatric treatment program." *Id*. He found claimant's abilities and limitations in responding to supervision and to coworkers in a work setting was "within the somewhat impaired range *at worst* and is not preclusive of work." *Id*. (emphasis added). Similarly, Plaintiff's abilities and limitations in responding to work pressures in a work setting "falls within the somewhat impaired range of impairment as long as she remains sober and is under appropriate psychiatric treatment." *Id*.

On September 23, 2013, State agency psychiatrist David Demuth, M.D., reviewed the medical records and found that Plaintiff had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation of an extended duration. (T. 87). Dr. Demuth opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and moderately limited in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 91-92). She was found to have no significant limitations in all other areas. *Id*.

On December 31, 2013, State agency psychologist Todd Finnerty, Psy.D., largely reiterated Dr. Demuth's findings, but found a number of additional moderate limitations, including her ability to interact with the general public, accept instructions and respond to criticism from supervisors, and to respond appropriately to changes in the work setting. (Tr. 115, 118-119).

On January 1, 2014, State agency physician Rannie Amiri, M.D., reviewed Plaintiff's medical records and opined that Plaintiff, in an 8-hour workday, could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand and/or walk 6 hours, sit for 6 hours, occasionally climb ladders/ropes/scaffolds, stoop, and crawl. (Tr. 117). She opined that Plaintiff had no manipulative, visual, communicative, or environmental limitations. (Tr. 117-118).

**C. Relevant Hearing Testimony**

At the June 18, 2015 hearing, Plaintiff testified as follows:

- She graduated high school and was attending community college from which she was expecting to graduate in six months with an associate's degree in culinary arts. (Tr. 32-33, 60). Some of her classes are online. (Tr. 61). She had been attending classes since 2013. *Id*. When she physically attends class, she only goes for an hour. (Tr. 65-66).

- She last worked two years earlier at a restaurant as a server for six months. (Tr. 34). She constantly argues with supervisors and staff. (Tr. 35). She worked as a telemarketer for five years, but left that job after a confrontation with a supervisor. (Tr. 36). She also left a job at Applebee's after one-year after a confrontation with co-workers. (Tr. 37). She also worked at IHOP for one year but lost the job after she "got into it" with her manager. (Tr. 39).

- She cannot perform any of her past jobs, and noted that she can barely do chores at home and cannot lift anything due to her back. (Tr. 48). She had rods surgically placed in her back after being assaulted by a former boyfriend. (Tr. 48-49). She underwent physical therapy.

(Tr. 49).

- She has neck pain, which she rated as a ten of ten on the day of the hearing. (Tr. 50). She revised it to a seven. *Id*. She takes Percocet and uses Flexeril for pain. (Tr. 51). The medications definitely help lessen the pain. (Tr. 52). She has received injections for her neck pain. (Tr. 53-54). She has also been given a TENS unit and a back brace. (Tr. 54).

- She always uses a cane, which she has used since early 2014 after she stopped needing a walker. (Tr. 54-55). She testified both the walker and the cane were prescribed by a doctor. (Tr. 55-56).

- She has had emotional problems for fifteen years, which became much wore after the assault by her former boyfriend. (Tr. 56). She is taking Zoloft, Trazadone, and Clonazepam for her mental problems. (Tr. 57).

- She last consumed alcohol in April of 2013. Up until that point, her drinking was "really bad." (Tr. 58).

- She lives with her children, who perform all the chores. (Tr. 59, 62-63).

- Her injuries are no longer improving. (Tr. 62).

- She sees a therapist, Rachael Martin, monthly. (Tr. 64).

The VE classified Plaintiff's past work as follows: server, Dictionary of Occupational Titles ("DICOT") 311.477-030, light exertional, semi-skilled with an SVP of 3; telephone solicitor, DICOT 299.357-014, sedentary, semi-skilled with an SVP of 3; nurse assistant, DICOT 355.674-014, medium exertional, semi-skilled with an SVP of 4; outside delivery, DICOT 299.477-010, light exertional, unskilled with an SVP of 2; finisher of circuit boards, DICOT 699.682-034, light exertional, unskilled with an SVP of 2; and, bench assembler, DICOT 706.684-022, light exertional, unskilled with an SVP of 2. (Tr. 68-71).

The ALJ posed the following hypothetical question to the VE:

> [A]ssume a hypothetical individual of the claimant's age and education with the past jobs and vocational profile you've described and assume further that this individual is limited to less than a full range of light work. By that, I mean this person can lift and/or carry 20 pounds occasionally, 10 pounds frequently, can sit,

stand, and walk for six hours in an eight-hour day, six hours each; can lift and carry as much as she can push and – I'm sorry, can push and pull as much as she can lift and/or carry; can frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; occasionally stoop; occasionally crawl; is limited to performing simple and routine tasks with regard to understanding, remembering, and carrying out instructions; and who is limited to superficial interaction with others in the workplace, including supervisors, co-workers, and the public; and is limited to tolerating few changes in a routine work setting defined as a static setting without frequent changes.

(Tr. 71).

The VE testified that such an individual could perform Plaintiff's past jobs in outside delivery, finisher of circuit boards, and bench assembly. (Tr. 71-72). The limitation to simple tasks ruled out the other, semi-skilled jobs. (Tr. 72).

The ALJ posed a second hypothetical that reflects the RFC that was ultimately adopted in the decision:

Assume the same worker with the same vocational profile previously assumed. This worker would be limited to less than a full range of sedentary work; that is to say she could lift and/or carry ten pounds occasionally, less than ten pounds frequently; who could sit for six hours in an eight-hour day, stand and/or walk for two hours in an eight-hour day, and could push or pull as much as she could lift and/or carry; who could occasionally climb ramps and stairs; never ladders, ropes, or scaffolds; and can occasionally balance, occasionally stoop; never kneel, never crouch, never crawl; who should never be in an environment of unprotected heights; whose ability to remember and carry out instructions is limited to performing simple and routine tasks; whose use of judgment is limited to simple work-related decisions; whose ability to respond appropriately or to interact appropriately with supervisors and co-workers is limited to superficial interaction with others in the workplace, including supervisors, co-workers, and the public, who's limited to dealing -- tolerating few changes in a routine setting. By that, I mean who should – who's limited to a static setting without frequent changes.

(Tr. 72-73).

The VE testified that the second hypothetical eliminated all of Plaintiff's past jobs. (Tr. 73). However, the VE identified the following unskilled, sedentary jobs as examples of work that such a person could perform: food and beverage order clerk, DICOT 209. 567-014 (21,000 jobs

nationally, 890 in Ohio, 180 locally); DICOT 205.367-014 (39,000 nationally, 800 in Ohio, and

260 locally); and, final assembler, DICOT 713.687-018 (22,000 nationally, 600 in Ohio, and 150

locally). (Tr. 73-74). The VE stated that his testimony was consistent with the DICOT. (Tr. 74).

A third hypothetical from the ALJ incorporated the same limitations as the second, but

added an off-task limitation of 20 percent. (Tr. 74). The VE testified that such a person was

unemployable. (Tr. 74). The VE clarified that, in his experience, an individual who was off-task

10 percent of the time was unemployable across all occupations. (Tr. 75). The VE also indicated

that an individual who missed more than one day off work per month would be unemployable.

*Id*.

Plaintiff's counsel also posed a series of questions to the VE.

> Q:   I want you to use the Judge's third hypothetical question -- I mean second
> hypothetical question. I also want you to assume that the person needed a
> cane to get around. Would the answer to the hypothetical question just
> with that one additional factor change your answer?

> A:   Not significantly. It might compromise some of the numbers on sedentary
> work but as you're aware, sedentary work is defined in the DOT as five
> and a half to six hours of sitting.

> Q:   Okay.

> A:   So the cane is particularly relevant for sitting work.

> Q:   Do you have an opinion as to how much the occupational base would be
> further eroded for hypothetical #2 if we just added the cane on? Is there --
> I know that's not a precise question but –

> ALJ:   Sure it is.

> ATTY: Okay. Thank you.

> VE:   My estimate is 20%.

> Q:   So 20% of the numbers that you gave us would be decreased based upon
> just the use of a cane?

9

A: Yes, and the reason is, Your Honor, is #1, it's fairly employer-specific, which is difficult to calculate and the DOT does talk about up to two and a half -- two hours of standing or walking without a particular distribution of time at the definition of sedentary work. So the best I can say is there's going to be a compromise in the numbers because the data doesn't go any further than that to be accurate.

Q: Right. Is your testimony in that regard consistent with the Dictionary of Occupational Titles?

A: Yes, generally, it is.

(Tr. 76-77).

The VE testified that if the hypothetical individual has to use a cane *and* required a sit/stand option, then that would eliminate all jobs based upon the latter, because, in his experience, "a discretionary sit/stand option doesn't exist for unskilled work." (Tr. 77).

Finally, the VE testified that the limitations to superficial interaction relates to the "quality of interaction," and is more a measure of the intensity of the interaction, whereas terms like occasional or frequent relate to the quantity of interaction. (Tr. 79). If the ALJ's second hypothetical question added a limitation to occasional interaction with others, it would eliminate the account clerk and food/beverage order clerk positions, but not the final assembly work. (Tr. 80).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.

2. The claimant has not engaged in substantial gainful activity since February 28, 2013, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: spinal fracture with surgical inclusion of rods, other arthropathies, affective disorders, and alcohol and substance abuse disorders (20 C.F.R. § 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant can occasionally climb ramps or stairs, and never climb ladders, ropes, or scaffolds. She can occasionally balance, or stoop, and never kneel, crouch, or crawl. The claimant should avoid exposure to unprotected heights. Her ability to remember and carry out instructions is limited to performing simple, routine tasks, and her use of judgment is limited to simple work-related decisions. She is limited to superficial interaction with others in the workplace, including supervisors, coworkers, and the public. She is limited to tolerating few changes in a routine work setting, meaning that she is limited to working in a static setting without frequent changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 9, 1973 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the

national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-21).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

Plaintiff's brief subdivides her argument—that the ALJ's finding at Step Five was contrary to law and/or not based upon substantial evidence—into five arguments. The court addresses Plaintiff's assignments of error individually and out of order, except that it addresses the first two assignments of error together as they both concern the ALJ's reliance on non-treating source opinions.

**1. Reliance on Non-Treating but Acceptable Medical Sources**

In the first and second assignments of error, Plaintiff generally takes issue with the ALJ's decision to credit the opinions of non-treating sources who, nevertheless, constitute acceptable medical sources pursuant to the regulations. (R. 11, PageID# 924-926).

State agency medical consultants who are non-treating sources are considered acceptable medical sources. "Generally, [the Social Security Administration] give[s] more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a source who has not examined [the claimant]." *See* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). The regulations state that ALJs "will consider prior administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants" 20 C.F.R. § 404.1513a(b), but they are "not required to adopt any prior administrative medical findings." 20 C.F.R. § 404.1513a(b)(1). Nevertheless, because said "medical or psychological consultants are highly qualified and experts in Social Security disability evaluation," ALJs must consider their opinions. *Id.* When considering these opinions, ALJs should look to factors such as the nature of the relationship (*i.e.* examining or non-examining or the frequency of examination), supportability, consistency, and other factors. 20 C.F.R. §§ 404.1527, 416.927. In addition, Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996), cautions that an ALJ

"must always consider and address medical source opinions [and] [i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

Plaintiff first suggests that reliance on the opinions of non-examining State agency physicians and psychologists violates the "substantial evidence test," because all the opinions pre-date January 10, 2014, after which 296 pages were added to the medical record. Plaintiff's brief, however, fails to specify in any manner which portions of the non-treating source opinions had become obsolete, nor does it explain why the additional medical records were significant. (R. 11, PageID# 924). Furthermore, Plaintiff fails to make even a general argument suggesting that either her mental or physical impairments worsened since 2014. *Id.* Plaintiff's brief also does not identify a single opinion from a treating, acceptable medical source concerning Plaintiff's functional limitations that is inconsistent with the RFC or the State agency opinions.

In addition, Plaintiff's cited authority does not support the general proposition that an ALJ errs by relying on an opinion simply because there exists evidence in the record that post-dates it. Plaintiff cites *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) and *Allen v. Califano*, 613 F.2d 139, 141 (6th Cir. 1980), which stand for the general proposition that the decision must be based on the record "as a whole." Neither case, however, involved the ALJ's reliance on State agency or consultative opinions where evidence was received into the record after those opinions were rendered. Also, in the case at bar, there is no indication that the ALJ ignored the 2014-2015 evidence post-dating the State agency or consultative examining opinions.[2]

---

[2] Rather, the decision references or discusses treatment notes from 2014 in several places. (Tr. 17 at ¶¶ 2, 4, 6)

Conversely, a number of decisions have rejected arguments such as the one advanced by Plaintiff. *See, e.g., McGrew v. Comm'r of Soc. Sec.*, 343 Fed. App'x 26, 32 (6th Cir. 2009) (indicating that an ALJ's reliance upon state agency reviewing physicians' opinions that were outdated was not error where the ALJ considered the evidence that was developed post-dating those opinions); *Patterson v. Comm'r of Soc. Sec.*, No. 1:16cv110, 2017 WL 914272 at *10 (N.D. Ohio Mar. 8, 2017) ("ALJ may rely on a state agency reviewer who did not review the entire record, so … long as the ALJ also considers the evidence post-dating the opinion.") (Knepp, M.J.); *Pence v. Comm'r of Soc. Sec.*, No. 1:13cv287, 2014 WL 1153704 at *13 (N.D. Ohio Mar. 20, 2014) (finding no error where the ALJ explained that weight was given to non-treating physicians' opinions because they were generally consistent with evidence of record and where the ALJ considered relevant evidence that was developed after the issuance of those opinions) (McHargh, M.J.).  A recent decision aptly summarized this point, "[i]f the Court were to adopt the Plaintiff's argument, any consultative examiner should be summarily dismissed if their opinion was submitted without full review of a plaintiff's medical record or predated any treatment records. **The Court is unaware of such a rule** and finds no error in the weight assigned [to the consultative examiner]." *Grant v. Colvin*, No. 3:14cv399, 2015 WL 4713662 at *13 (E.D. Tenn. Aug. 7, 2015) (emphasis added); *see also Jenkins v. Colvin*, No. 2:13cv0083, 2016 WL 5724229 at *7 (M.D. Tenn. Sept. 30, 2016) ("Plaintiff points to no authority requiring a consultative examiner's opinion to be rejected based on a failure to review case management notes and medication management visits.")

Plaintiff does cite *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009), which is support for her argument. But consistent with the above case law, *Blakley* notes that where a non-treating source opinion is credited over a subsequent treating source opinion and after the

creation of substantial records post-dating the non-treating opinion, "we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Id.* (internal quotations omitted). Here, the ALJ plainly considered evidence post-dating the opinions. (Tr. 17). Plaintiff, as mentioned above, cites no medical evidence or opinions that conflicts with the opinions in question. Therefore, Plaintiff's brief does not identify any error warranting a remand stemming from the ALJ's reliance on the opinions of non-treating medical sources.

Plaintiff's related second argument is not altogether clear. She appears to suggest that the ALJ erred by relying on non-treating but acceptable medical source opinions concerning Plaintiff's physical limitations, rather than on Plaintiff's own subjective complaints of pain in determining the extent of her limitations. (R. 11, PageID# 925). In addition, Plaintiff suggests that the ALJ could not ascribe great weight to the non-treating source medical opinions, who opined Plaintiff could perform light exertional work, and concomitantly find that Plaintiff's subjective pain complaints warranted a limitation to sedentary work.[3] Setting aside the fact that Plaintiff is challenging a determination that was favorable to her—a finding that she should be limited to the more restrictive sedentary level of exertion rather than the light exertional level— Plaintiff's assertion that "[t]he ALJ, who is not a physician, cannot make this determination" contradicts the express language of the regulations. (R. 11, PageID# 925). The determination in question is Plaintiff's RFC, which is not a medical opinion, but rather an issue that is reserved to

---

[3] Plaintiff concludes her unavailing argument concerning the ALJ's decision to credit the non-treating source opinions with the *non sequitur* that the RFC should have included a sit/stand at will limitation. (R. 11, PageID# 925-926). Plaintiff, however, does not cite any medical source suggesting that she required such a sit/stand option. *Id.*

the Commissioner for final determination. 20 C.F.R. §§ 404.1527(d)(2) & 404.927(d)(2). To reinforce the point that RFC is not a medical opinion, the regulations expressly state, "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner."[4] 20 C.F.R. §§ 404.1527(d)(3) & 404.927(d)(3). Moreover, although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009).

As such, Plaintiff's argument is wholly without merit.

### 2. Use of a Cane

Plaintiff argues that the hypothetical question posed to the VE was inaccurate because it omitted any mention of her need for a cane and, therefore, the resulting RFC was not supported by substantial evidence.[5] (R. 11, PageID# 926). The Commissioner argues that the ALJ's finding was supported by substantial evidence, and further asserts that even if there was any error, it

---

[4] It also bears noting that to the extent the ALJ found Plaintiff's pain complaints to be partially credible thereby warranting a more restrictive RFC, there is nothing improper about such a determination as "credibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.") (citations omitted). "While in theory [a court] will not 'disturb' an ALJ's credibility determination without a 'compelling reason,' *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), in practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

[5] Plaintiff argues this omission is significant, because the VE testified that the occupational base for the jobs identified would be reduced by 20 percent. (R. 11, PageID# 926, *citing* Tr. 76-77).

would be harmless because a 20 percent erosion of the occupational base would continue to constitute a significant number of jobs. (R. 13, PageID# 947-948).

At the fifth and final step of the disability analysis, if a claimant cannot perform her past relevant work, it must be determined whether the claimant can adjust other work in light of the claimant's RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this final step, the burden shifts to the Commissioner to prove the existence of a significant number of jobs in the national economy that a person with the claimant's limitations could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *accord White v. Comm'r of Soc. Sec.*, 312 Fed. App'x 779 (6th Cir. 2009). An ALJ's finding in this regard must be supported by substantial evidence (*i.e.* that the claimant has the vocational qualifications to perform specific jobs). *Workman v. Comm'r of Soc. Sec.*, 105 Fed. App'x 794, 799 (6th Cir. 2004) (*citing Varley v. Sec'y of Health & Varley*, 820 F.2d 777, 779 (6th Cir. 1987)).

Testimony from a vocational expert—in response to a hypothetical question—may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987

F.2d 1230, 1235 (6th Cir. 1993)).

Plaintiff's argument appears to be founded on her own hearing testimony that she was prescribed a cane after her surgery. (Tr. 55). More specifically, she testified that she was prescribed a walker after surgery; and, after she improved, she was prescribed a cane that she still uses. *Id*.

Unfortunately, neither party cited the directly applicable Social Security Ruling ("SSR") 96-9p, 1996 WL 374185 (Jul. 2, 1996). That Ruling provides:

> **Medically required hand-held assistive device**: *To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, **and** describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> Since most unskilled sedentary work requires only occasional lifting and carrying of light objects such as ledgers and files and a maximum lifting capacity for only 10 pounds, an individual who uses a medically required hand-held assistive device in one hand may still have the ability to perform the minimal lifting and carrying requirements of many sedentary unskilled occupations with the other hand. For example, an individual who must use a hand-held assistive device to aid in walking or standing because of an impairment that affects one lower extremity (e.g., an unstable knee), or to reduce pain when walking, who is limited to sedentary work because of the impairment affecting the lower extremity, and who has no other functional limitations or restrictions may still have the ability to make an adjustment to sedentary work that exists in significant numbers. On the other hand, the occupational base for an individual who must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment) may be significantly eroded.

SSR 96-9 (emphasis added). Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, but found it unavailing when the record lacked supporting medical documentation demonstrating the requirement for such a device. *See, e.g., Blackburn v.*

*Colvin*, No. 1:15cv1398, 2016 WL 4821766 at *5 (N.D. Ohio Sept. 15, 2016) (noting that Plaintiff's use of crutches and a wheelchair to ambulate were not supported by medical documentation, as required by Social Security Ruling 96-9p) (Pearson, J.); *Mitchell v. Comm'r of Soc. Sec.*, No. 4:13cv1969, 2014 WL 3738270 (N.D. Ohio Jul. 29, 2014) (finding that Plaintiff's testimony did not qualify as "medical documentation establishing the need" for the cane under SSR 96-9p) (Pearson, J.); *Smith v. Astrue*, No. 2:11-0065, 2012 WL 4329007 at *8 (M.D. Tenn. July 16, 2012), *report and recommendation adopted*, 2012 WL 4328993 (M.D. Tenn. Sept. 20, 2012) ("Even if the ALJ had not discussed the use of the cane, Plaintiff failed to provide medical documentation of its requirement. The only evidence supporting a cane requirement comes from Plaintiff's testimony.")

Here too, Plaintiff fails to draw the court's attention to any medical documentation indicating that she was prescribed a cane beyond her own hearing testimony, which does not qualify as medical documentation. While there are some indications in the medical records that Plaintiff was using a cane, this is insufficient to establish that the cane was medically required. Nor does Plaintiff cite to any medical records describing the circumstances for which a cane is needed as required by SSR 96-9p. *See, e.g., Paul v. Comm'r of Soc. Sec.*, No. 2:13cv14911, 2015 WL 1299980 at *1 (E.D. Mich. Mar. 23, 2015) ("[P]laintiff cannot simply make bald claims that the ALJ erred, while leaving it to the Court to scour the record to support this claim."); *Nash v. Comm'r of Soc. Sec.*, No. 1:12 CV 2234, 2013 WL 4736736, at *3 (N.D. Ohio Sept. 3, 2013) ("it is not this Court's function to scour the administrative record and craft arguments on Plaintiff's behalf."); *Crocker v. Comm'r of Soc. Sec.*, No. 1:08cv1091, 2010 WL 882831 at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.") Furthermore, the court's Initial

Order made it clear that "[a]ny factual allegations or arguments relying upon the record that either do not cite to the record or are unsupported by the record citation will not be considered by the Court." (R. 5, PageID# 29).

The court finds Plaintiff's argument without merit as she fails to cite any medical documentation demonstrating that her use of a cane was medically required.

### 3. Alleged Conflict between VE's Testimony and the DICOT

In her fifth assignment of error, Plaintiff argues that the VE's testimony conflicts with the DICOT. (R. 11, PageID# 927). Specifically, she contends that the three jobs identified by the VE, in response to the hypothetical that reflects the ultimate RFC, contain job descriptions in the DICOT that are incompatible with the "superficial interaction" limitation contained in the RFC.[6] *Id*.

Pursuant to SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), when a VE "provides evidence about the requirements of a job or occupation," the ALJ "has an affirmative responsibility to ask about any possible conflict between that VE … evidence and information provided in the DOT." First, the ALJ must ask the VE "if the evidence he or she has provided conflicts" with the DICOT. *Id*. Second, if the VE's evidence "appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." *Id.*

In the present case, the ALJ relied upon the VE's testimony identifying three different jobs that someone with Plaintiff's limitations could perform—food/beverage order clerk, charge account clerk, and final assembler. (Tr. 74). Based on Plaintiff's own reading of the three jobs as

_____

6 Plaintiff's assertion that the job duties outlined in the DICOT are inconsistent with the superficial interaction limitation is not based on any authority, but merely on her own reading of the job description.

described in the DICOT, she contends that those jobs are actually inconsistent with the RFC's limitation to only "superficial interaction." (R. 11, PageID# 927-928). However, "[a]ny argument that the jobs identified by the VE cannot be performed by someone with the RFC as determined by the ALJ is not cognizable." *Albrecht v. Comm'r of Soc. Sec.*, No. 1:14cv2116, 2015 WL 4985475 at *7 (N.D. Ohio Aug. 18, 2015) (Polster, J.) The Sixth Circuit Court of Appeals has addressed a post-hearing argument alleging an inconsistency between the VE's testimony and the DICOT, as follows:

> Even if there were an inconsistency, the plaintiff has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by the plaintiff until after the ALJ issued his decision. As an initial matter, neither the ALJ nor the VE is required to follow the DOT. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications"). The ALJ fully complied with SSR 00-4p when he asked the VE whether there was "any discrepancy between [her] opinions and the DOT standards for the requirements of the jobs [she] named." *See Lindsley*, 560 F.3d at 606 (holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict). As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. *Id*. **This obligation falls to the plaintiff's counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that plaintiff's counsel did not do so is not grounds for relief**. *See Ledford v. Astrue*, 311 Fed. Appx. 746, 757 (6th Cir. 2008)*. The plaintiff's first argument is without merit.

*Beinlich v. Comm'r of Soc. Sec.*, 345 Fed. App'x 163, 168-69 (6th Cir. 2009) (emphasis added);

*accord Leach v. Comm'r of Soc. Sec.*, No. 13cv14095, 2014 WL 4794167 at *8 (E.D. Mich. Sept. 25, 2014) ("where the ALJ specifically asked the VE if her testimony comported with the DOT, and the VE responded in the affirmative, that is all that is required"); *Corlew v. Comm'r of Soc. Sec.*, No. 12cv10004, 2013 WL 1190208 at *7 (E.D. Mich. Feb. 19, 2013), *report and recommendation adopted*, 2013 WL 1187515 (E.D. Mich. Mar. 22, 2013) ("Plaintiff's arguments

regarding the various flaws in the vocational expert's testimony are barred because plaintiff did not raise those issues at the hearing."); *Norman v. Comm'r of Soc. Sec.*, No. 1:14cv2374, 2016 WL 922741 at *4 (N.D. Ohio Mar. 11, 2016) (Lioi, J.)

In the present case, the ALJ specifically asked the VE: "Is this testimony consistent with the DOT?" (Tr. 74). The VE responded in the affirmative. (Tr. 74). At the hearing, Plaintiff's counsel had an opportunity to question the VE and did so at length. (Tr. 74-80). However, counsel did not ask about any inconsistencies between the VE's hearing testimony and the DICOT regarding whether the three jobs identified could be performed by an individual with limitations to only superficial interaction. *Id.* It is not error for the ALJ to rely on a VE's unchallenged or uncontested testimony. *See also Wood v. Colvin*, No. 13cv12572, 2014 WL 1377814 at * (E.D. Mich. Mar. 20, 2014) ("Since [claimant] did not take issue with this testimony at the hearing, the ALJ was entitled to rely on the VE's testimony. The Court sees no error committed here.") Plaintiff cites no law suggesting that an ALJ has any additional duty where no apparent or alleged inconsistency is brought to his or her attention. The above authority strongly contradicts any such assertion.

Therefore, Plaintiff's fifth assignment of error is without merit.

### 4. Superficial Interaction

In her fourth assignment of error, Plaintiff contends that the hypothetical question was deficient because the term "superficial interaction" does not accurately describe durational requirements of substantial gainful activity. (R. 11, PageID# 926). She notes that according to the VE's testimony, the term "superficial" describes the quality or nature of the interactions, and not the duration or quantity of the interactions. *Id.* Instead, Plaintiff suggests that the ALJ should have limited her to "occasional" interaction with others, which does relate to the duration or

quantity of the interactions, and limits such interaction to no more than one-third of the workday. *Id*. If the word "superficial" is changed to "occasional" in the ALJ's hypothetical question, according to the VE, all jobs would be eliminated except the final assembler job. (T. 80).

While Plaintiff's characterization of the VE's testimony is correct, her argument is undeveloped. As pointed out by the Commissioner, it is Plaintiff's burden to prove that she was disabled. 20 C.F.R. § 404.1512(a)(1). While at Step Five the burden "shifts to the Commissioner to prove that work is available in the national economy that the claimant can perform with his proven RFC … ***[t]he claimant retains, however, the burden to prove his RFC even in step five*.**" *Roby v. Comm'r of Soc. Sec.*, 48 F. App'x 532, 538 (6th Cir. 2002) (emphasis added) (*citing Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)); *accord Moran v. Comm'r of Soc. Sec.*, 40 F. Supp. 3d 896, 917 (E.D. Mich. 2014) ("The claimant must provide evidence establishing her RFC."); *Mays v. Colvin*, No. 1:13cv191, 2013 WL 5797681 at *10 (N.D. Ohio Oct. 28, 2013) ("It is [claimant's] burden to demonstrate the severity and extent of his functional impairments.") (White, M.J.)

Therefore, Plaintiff retained the burden of proving that she was limited to occasional interaction. Plaintiff has failed to meet that burden, as she has neglected to point to any evidence demonstrating that a limitation to only occasional interaction with others was required. Again, it is not sufficient for Plaintiff to simply claim the ALJ erred or that the RFC should have been more restrictive, leaving it to the court to scour the record for evidence supporting her claim. Plaintiff's fourth assignment of error is deemed waived as it is insufficiently developed.[7]

---

7   "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) (internal citations omitted)).

Furthermore, looking at the opinion evidence of record, neither the State agency psychologists nor Dr. Pickholtz, the consultative examiner, suggested that Plaintiff should be limited to "occasional" interaction. As recounted above in the medical history portion of this report and recommendation, Dr. Pickholtz merely found that Plaintiff was "somewhat impaired … at worst" in her ability to respond to supervision and coworkers in a work setting, and that her limitation in this regard was "not preclusive of work." (Tr. 472). Dr. DeMuth found that Plaintiff was "not significantly limited" in her ability to "interact appropriately with the general public" or "to accept instructions and respond appropriately to criticism from supervisor," and "moderately limited" in her "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes." (Tr. 91-92). Dr. Finnerty found moderate limitations in these same three categories. (Tr. 119). Plaintiff cites no law, regulation, or other authority suggesting that moderate limitations inherently necessitate a vocational limitation to only *occasional* interaction with supervisors, co-workers, or the public.

Thus, the fourth assignment of error also is without merit.

## VI. Conclusion

For the foregoing reasons, it is recommended that the Commissioner's final decision be AFFIRMED.

s/ David A. Ruiz
David A. Ruiz
United States Magistrate Judge

Date: June 8, 2017

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).